# EXHIBIT 1

## Bidding Procedures

# BIDDING PROCEDURES[1]

On September 14, 2011, SSI Group Holding Corp. and its affiliated debtors and debtors in possession (collectively, the "Debtors"),[2] filed a motion (the "Motion") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") seeking, among other things, authority to conduct an auction and sale process for the Debtors' Souper Salad and Grandy's businesses.  On [_____], 2011 the Bankruptcy Court entered an order (the "Bidding Procedures Order"), which, among other things, authorized the Debtors to proceed with their proposed sale and auction process as set forth in more detail below (the "Bidding Procedures"). Accordingly, the Debtors are soliciting bids for the Debtors' businesses as follows:

(i)      With respect to the assets related solely to the Grandy's business (the "Grandy's Assets"), the Debtors entered into a Stalking Horse Asset Purchase Agreement by and among Captain D's, LLC, as purchaser (the "Grandy's Stalking Horse Purchaser"), and Souper Salad, Inc., Souper Brands, Inc., and SSI-Grandy's, LLC, as sellers thereto, dated as of September [__], 2011 (the "Grandy's Asset Purchase Agreement"), a copy of which is attached to the Motion as Exhibit B.  The Debtors are soliciting bids for the Grandy's Assets based on the terms of the Grandy's Asset Purchase Agreement and, if competing bids are received, the Debtors will conduct an auction to determine the highest and otherwise best bid for the Grandy's Assets.

(ii)      With respect to the assets related solely to the Souper Salad business (the "Souper Salad Assets"), at this time the Debtors have not entered into a stalking horse agreement. Instead, the Debtors are soliciting bids for the Souper Salad Assets based on the terms set forth in a form of Asset Purchase Agreement (the "Souper Salad Asset Purchase Agreement"), a copy of which is attached to the Motion as Exhibit C.  If two or more bids are received for the Souper Salad Assets, the Debtors may, but are not required to, choose a stalking horse and grant certain stalking horse protections to a Qualified Bidder (as defined below).  The Debtors will then conduct an auction to determine the highest and otherwise best bid for the Souper Salad Assets.

(iii)      The Debtors are also soliciting bids for the combined assets of the Souper Salad and Grandy's businesses (the "Combined Souper/Grandy's Assets") based on a form of Asset Purchase Agreement (the "Combined Asset Purchase Agreement"), a copy of which is attached to the Motion as Exhibit D.  If the Debtors receive a bid for the Combined Souper/Grandy's Assets, they may conduct an auction with respect thereto.

---

[1]   Capitalized terms used but not defined herein shall have the meanings set forth in the motion to approve these Bidding Procedures (the "Bidding Procedures Motion") or the Grandy's Asset Purchase Agreement, the Souper Salad Asset Purchase Agreement, and/or the Combined Asset Purchase Agreement, as applicable.

[2]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: SSI Group Holding Corp. (0158), Souper Salad, Inc. (0941), SSI-Grandy's LLC (4554) and Souper Brands, Inc. (5468).  The Debtors' corporate headquarters and the mailing address for each of the Debtors is 4004 Belt Line Rd., Suite 160, Addison, TX 75001.

At the conclusion of the auction process, the Debtors, in consultation with the Committee, will determine which bid, or combination of bids, constitutes the highest and best offer for the Debtors' Combined Souper/Grandy's Assets, or any portion(s) thereof.

## Marketing Process

### Contact Parties.

The Debtors, in consultation with their investment banker Morgan Joseph TriArtisan LLC ("Morgan Joseph") and the Committee, have developed a list of parties who the Debtors believe may potentially be interested in and who the Debtors reasonably believe would have the financial resources to consummate a competing transaction for the Grandy's Assets, a transaction for the Souper Salad Assets and/or a transaction for the Combined Souper/Grandy's Assets (any such transaction, an "Alternative Transaction"), which list includes both potential strategic investors and potential financial investors (each, individually, a "Contact Party", and collectively, the "Contact Parties"). The Debtors and Morgan Joseph are already in the process of contacting the Contact Parties to explore their interest in pursuing an Alternative Transaction. The Contact Parties may include parties whom the Debtors or their advisors have previously contacted regarding a transaction, regardless of whether such parties expressed any interest, at such time, in pursuing a transaction. The Debtors will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate.

The Debtors may distribute to each Contact Party an "Information Package," comprising:

(a)     A cover letter;

(b)     A copy of these Bidding Procedures and the Motion;

(c)     A copy of a confidentiality agreement no more restrictive than one signed by the Grandy's Stalking Horse Purchaser; and

(d)     Such other materials as the Debtors and Morgan Joseph deem appropriate under the circumstances including, but not limited to, a preliminary "teaser."

### Access to Diligence Materials.

To participate in the bidding process and to receive access to due diligence (the "Diligence Materials"), a party must submit to the Debtors an executed confidentiality agreement in the form and substance satisfactory to the Debtors, but no more restrictive than the form of confidentiality agreement entered by the Grandy's Stalking Horse Purchaser, and evidence reasonably demonstrating the party's financial capability with respect to an Alternative Transaction as determined by the Debtors.

A party who qualifies for access to Diligence Materials shall be a "Preliminary Interested Investor." All due diligence requests must be directed to Morgan Joseph.

For any Preliminary Interested Investor who is a competitor of the Debtors or is affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold any Diligence

Materials that the Debtors, in their sole reasonable discretion and after consultation with the Committee, determine are business-sensitive or otherwise not appropriate for disclosure to such Preliminary Interested Investor.

### Due Diligence from Bidders.

Each Preliminary Interested Investor and Qualified Bidder (as defined below) shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Bidder and its contemplated transaction. Failure by a Preliminary Interested Investor to comply with requests for additional information and due diligence access will be a basis for the Debtors to determine that such bidder is not a Qualified Bidder. Failure by a Qualified Bidder (other than the Grandy's Stalking Horse Purchaser) to comply with requests for additional information and due diligence access will be a basis for the Debtors to determine that a bid made by such Qualified Bidder is not a Qualified Bid.

## Auction Qualification Process

To be eligible to participate in the Auction (defined below), each offer, solicitation or proposal (each, a "<u>Bid</u>"), and each party submitting such a Bid (each, a "<u>Bidder</u>"), must be determined by the Debtors, in consultation with the Committee, to satisfy each of the conditions set forth below. A Bid may not be considered qualified for the Auction if such Bid does not satisfy each of the following conditions:

### Bids Solely for the Grandy's Assets.

(a) <u>Good Faith Deposit</u>: Each Bid solely for the Grandy's Assets must be accompanied by a deposit in the amount of $600,000 to an interest bearing escrow account to be identified and established by the Debtors (the "<u>Grandy's Good Faith Deposit</u>" with respect to any Bid solely for the Grandy's Assets). The Deposit (in the amount of $600,000) already provided to the Debtors by the Grandy's Stalking Horse Purchaser pursuant to the Grandy's Asset Purchase Agreement constitutes a Good Faith Deposit.

(b) <u>Same or Better Terms</u>: Each Bid solely for the Grandy's Assets must be on terms that, in the Debtors' business judgment and in consultation with the Committee, are the same or better than the terms of the Grandy's Asset Purchase Agreement and must be for all or substantially all of the Grandy's Assets.

(c) <u>Executed Agreement</u>: Each Bid solely for the Grandy's Assets must be based on the Grandy's Asset Purchase Agreement and include executed transaction documents, signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate an Alternative Transaction (the "<u>Modified Grandy's Asset Purchase Agreement</u>"). A Bid solely for the Grandy's Assets shall also include a copy of the Grandy's Asset Purchase Agreement marked against the Modified Grandy's Asset Purchase Agreement to show all changes requested by the Bidder (including those related to purchase price and to remove all provisions that apply only to the Grandy's Stalking Horse Purchaser as the stalking horse bidder such as the Expense Reimbursement provisions that are

contained in the Grandy's Asset Purchase Agreement).

(d) <u>Minimum Bid</u>:  Each Bid solely for the Grandy's Assets must propose a minimum cash purchase price equal to or greater than $6,325,000 (the "<u>Grandy's Minimum Cash Amount</u>" with respect to any Bid solely for the Grandy's Assets), which is the aggregate of the sum of (i) the purchase price under the Grandy's Asset Purchase Agreement; (ii) the full dollar value of the Expense Reimbursement payable to the Grandy's Stalking Horse Purchaser, and (iv) $25,000.

(e) <u>Designation of Assumed Contracts and Leases</u>:  A Bid solely for the Grandy's Assets must identify any and all executory contracts and unexpired leases of the Debtors that the Bidder wishes to have assumed and assigned to it pursuant to an Alternative Transaction.

(f) <u>Assumption of Liabilities</u>:  A Bid solely for the Grandy's Assets must provide for the payment or assumption of at least all or substantially all of the Assumed Obligations (as defined in the Grandy's Asset Purchase Agreement).

(g) <u>Corporate Authority</u>:  A Bid solely for the Grandy's Assets must include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed Alternative Transaction; provided, however, that, if the Bidder is an entity specially formed for the purpose of effectuating the Alternative Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the Alternative Transaction by the equity holder(s) of such Bidder.

(h) <u>Proof of Financial Ability to Perform</u>:  A Bid solely for the Grandy's Assets must include written evidence that the Debtors reasonably conclude, in consultation with the Committee, demonstrates that the Bidder has the necessary financial ability to close the Alternative Transaction and provide adequate assurance of future performance under all contracts and leases to be assumed and assigned in such Alternative Transaction, which each Bidder agrees and acknowledges by submitting a Bid may be shared by the Debtors, prior to the Sale Hearing, with the landlords and counterparties under the Debtors' unexpired leases and contracts proposed under the Bid to be assumed and assigned to the Bidder.  Such information must include, inter alia, the following:

(i) contact names and numbers for verification of financing sources;

(ii) evidence of the Bidder's internal resources and proof of unconditional debt or equity funding commitments, from a recognized banking institution in the amount of the cash portion of such Bid or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors in the amount of the cash portion of such Bid, in each case, as are needed to close the Alternative Transaction;

(iii) the Bidder's current financial statements (audited if they exist); and

(iv)    any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating that such Bidder has the ability to close the Alternative Transaction; provided, however, that the Debtors shall determine, in their reasonable discretion, in consultation with the Debtors' advisors and the Committee, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Bidder's financial qualifications.

(i)    Contingencies: Each Bid solely for the Grandy's Assets (i) may not contain representations and warranties, covenants, termination rights materially more onerous in the aggregate to the Debtors than those set forth in the Grandy's Asset Purchase Agreement and (ii) may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects of specified representations and warranties at the Closing.

(j)    Irrevocable: Each Bid solely for the Grandy's Assets must be irrevocable through the Auction, provided, however, that if such Bid is accepted as the Successful Bid or the Backup Bid (each as defined herein), such Bid shall continue to remain irrevocable, subject to the terms and conditions of the Bidding Procedures.

(k)    Bid Deadline: The following parties must receive a Bid solely for the Grandy's Assets in writing, on or before [    ], 2011 at 4:00 p.m. (prevailing Eastern Time) or such earlier date as may be agreed to by the Debtors (the "Bid Deadline"): (i) the Debtors, Souper Salad, Inc., 4004 Belt Line Road, Suite 160, Addison, Texas 75201, Attn: Chief Executive Officer; (ii) counsel for the Debtors, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: Scott K. Rutsky; (iii) counsel to the Committee, Pachulski Stang Ziehl & Jones, LLP, 919 N. Market Streets, 17th Floor, Wilmington, DE 19801, Attn: Bradford J. Sandler, Esquire; (iv) counsel to the Grandy's Stalking Horse Purchaser, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654, Attn: Patrick J. Nash, Jr.; and (v) Morgan Joseph, 3475 Piedmont Road, Suite 260, Atlanta, Georgia 30305, Attn: Alex Fisch.

### Bids Solely for the Souper Salad Assets.

(a)    Good Faith Deposit: Each Bid solely for the Souper Salad Assets must be accompanied by a deposit in the amount of at least ten percent (10%) of the proposed Purchase Price to be deposited into an interest bearing escrow account to be identified and established by the Debtors (the "Souper Salad Good Faith Deposit" with respect to any Bid solely for the Souper Salad Assets).

(b)    Same or Better Terms: Each Bid solely for the Souper Salad Assets must be on terms that, in the Debtors' business judgment and in consultation with the Committee, are the same or better than the terms of the Souper Salad Asset Purchase Agreement.

(c)    <u>Executed Agreement</u>:  Each Bid solely for the Souper Salad Assets must be based on the Souper Salad Asset Purchase Agreement and include executed transaction documents, signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate an Alternative Transaction (the "<u>Modified Souper Salad Asset Purchase Agreement</u>").  A Bid shall also include a copy of the Souper Salad Asset Purchase Agreement marked against the Modified Souper Salad Asset Purchase Agreement to show all changes requested by the Bidder (including those related to purchase price).

(d)    <u>Minimum Bid</u>:  The Debtors, in consultation with the Committee, reserve the right to reject any proposed Bid for the Souper Salad Assets as providing insufficient cash and/or other consideration.

(e)    <u>Designation of Contracts and Leases</u>:  Each Bid solely for the Souper Salad Assets must identify any and all executory contracts and unexpired leases of the Debtors that the Bidder wishes to have assumed and assigned to it pursuant to an Alternative Transaction.

(f)    <u>Assumption of Liabilities</u>:  Each Bid solely for the Souper Salad Assets must provide for the payment or assumption of at least all or substantially all of the Assumed Obligations (as defined in the Souper Salad Asset Purchase Agreement).

(g)    <u>Corporate Authority</u>:  A Bid solely for the Souper Salad Assets must include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed Alternative Transaction; <u>provided</u>, <u>however</u>, that, if the Bidder is an entity specially formed for the purpose of effectuating the Alternative Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the Alternative Transaction by the equity holder(s) of such Bidder.

(h)    <u>Proof of Financial Ability to Perform</u>:  Each Bid solely for the Souper Salad Assets must include written evidence that the Debtors, in consultation with the Committee, reasonably conclude demonstrates that the Bidder has the necessary financial ability to close the Alternative Transaction and provide adequate assurance of future performance under all contracts and leases to be assumed and assigned in such Alternative Transaction, which each Bidder agrees and acknowledges by submitting a Bid may be shared by the Debtors, prior to the Sale Hearing, with the landlords and counterparties under the Debtors' unexpired leases and contracts proposed under the Bid to be assumed and assigned to the Bidder.  Such information must include, *inter alia*, the following:

(i)    contact names and numbers for verification of financing sources;

(ii)    evidence of the Bidder's internal resources and proof of unconditional debt or equity funding commitments, from a recognized banking institution in the amount of the cash portion of such Bid or the posting of an irrevocable letter of credit from a recognized banking institution issued

in favor of the Debtors in the amount of the cash portion of such Bid, in each case, as are needed to close the Alternative Transaction;

(iii)    the Bidder's current financial statements (audited if they exist); and

(iv)    any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating that such Bidder has the ability to close the Alternative Transaction; provided, however, that the Debtors shall determine, in their reasonable discretion, in consultation with the Debtors' advisors, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Bidder's financial qualifications.

(i)    Contingencies: Each Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects of specified representations and warranties at the Closing.

(j)    Irrevocable: Each Bid solely for the Souper Salad Assets must be irrevocable through the Auction, provided, however, that if such Bid is accepted as the Successful Bid or the Backup Bid (each as defined herein), such Bid shall continue to remain irrevocable, subject to the terms and conditions of the Bidding Procedures.

(k)    Bid Deadline: The following parties must receive a Bid solely for the Souper Salad Assets in writing, on or before [    ], 2011 at 4:00 p.m. (prevailing Eastern Time) or such earlier date as may be agreed to by the Debtors (the "Bid Deadline"): (i) the Debtors, Souper Salad, Inc., 4004 Belt Line Road, Suite 160, Addison, Texas 75201, Attn: Chief Executive Officer; (ii) counsel for the Debtors, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: Scott K. Rutsky; (iii) counsel to the Committee, Pachulski Stang Ziehl & Jones, LLP, 919 N. Market Streets, 17th Floor, Wilmington, DE 19801, Attn: Bradford J. Sandler, Esquire; (iv) counsel to the Grandy's Stalking Horse Purchaser, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654, Attn: Patrick J. Nash, Jr.; and (v) Morgan Joseph, 3475 Piedmont Road, Suite 260, Atlanta, Georgia 30305, Attn: Alex Fisch.

### *Bids for All the Combined Souper/Grandy's Assets.*

(a)    Good Faith Deposit: Each Bid for all the Combined Souper/Grandy's Assets must be accompanied by a deposit in the amount of at least the greater of (i) ten percent (10%) of the proposed Purchase Price and (ii) $600,000 to an interest bearing escrow account to be identified and established by the Debtors (the "Combined Souper/Grandy's Good Faith Deposit" with respect to any Bid for all the Combined Souper/Grandy's Assets, and together with the Grandy's Good

Faith Deposit and the Souper Salad Good Faith Deposit, the "Good Faith Deposits").

(b) **Same or Better Terms:** Each Bid for all the Combined Souper/Grandy's Assets must be on terms that, in the Debtors' business judgment, are the same or better than the terms of the Combined Asset Purchase Agreement, and must be for all, or substantially all, of the Combined Souper/Grandy's Assets.

(c) **Executed Agreement:** Each Bid for all the Combined Souper/Grandy's Assets must be based on the Combined Asset Purchase Agreement and include executed transaction documents, signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate an Alternative Transaction (the "Modified Combined Asset Purchase Agreement"). A Bid for all the Combined Souper/Grandy's Assets shall also include a copy of the Combined Asset Purchase Agreement marked against the Modified Combined Asset Purchase Agreement to show all changes requested by the Bidder (including those related to purchase).

(d) **Minimum Bid:** Each Bid for all the Combined Souper/Grandy's Assets must propose a cash purchase price equal to or greater than (i) the Grandy's Minimum Cash Amount (including, among other things, the full dollar value of the Expense Reimbursement payable to the Grandy's Stalking Horse Purchaser, as detailed above), plus (ii) the Souper Salad Breakup Fee, if any, plus (iii) $25,000.

(e) **Designation of Contracts and Leases:** Each Bid for all the Combined Souper/Grandy's Assets must identify any executory contracts and unexpired leases of the Debtors that the Bidder wishes to have assumed and assigned to it pursuant to an Alternative Transaction.

(f) **Assumption of Liabilities:** Each Bid for all the Combined Souper/Grandy's Assets must provide for the payment or assumption of at least all or substantially all of the Assumed Obligations under both the Souper Salad Asset Purchase Agreement and the Grandy's Asset Purchase Agreement.

(g) **Corporate Authority:** Each Bid for all the Combined Souper/Grandy's Assets must include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed Alternative Transaction; provided, however, that, if the Bidder is an entity specially formed for the purpose of effectuating the Alternative Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the Alternative Transaction by the equity holder(s) of such Bidder.

(h) **Proof of Financial Ability to Perform:** Each Bid for all the Combined Souper/Grandy's Assets must include written evidence that the Debtors, in consultation with the Committee, reasonably conclude demonstrates that the Bidder has the necessary financial ability to close the Alternative Transaction and provide adequate assurance of future performance under all contracts and leases

to be assumed and assigned in such Alternative Transaction, which each Bidder agrees and acknowledges by submitting a Bid may be shared by the Debtors, prior to the Sale Hearing, with the landlords and counterparties under the Debtors' unexpired leases and contracts proposed under the Bid to be assumed and assigned to the Bidder. Such information must include, *inter alia*, the following:

(i) contact names and numbers for verification of financing sources;

(ii) evidence of the Bidder's internal resources and proof of unconditional debt or equity funding commitments, from a recognized banking institution in the amount of the cash portion of such Bid or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors in the amount of the cash portion of such Bid, in each case, as are needed to close the Alternative Transaction;

(iii) the Bidder's current financial statements (audited if they exist); and

(iv) any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating that such Bidder has the ability to close the Alternative Transaction; provided, however, that the Debtors shall determine, in their reasonable discretion, in consultation with the Debtors' advisors, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Bidder's financial qualifications.

(i) Contingencies: Each Bid for all the Combined Souper/Grandy's Assets (i) may not contain representations and warranties, covenants, termination rights materially more onerous in the aggregate to the Debtors than those set forth in the Grandy's Asset Purchase Agreement and (ii) may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects of specified representations and warranties at the Closing.

(j) Irrevocable: Each Bid for all the Combined Souper/Grandy's Assets must be irrevocable through the Auction, provided, however, that if such Bid is accepted as the Successful Bid or the Backup Bid (each as defined herein), such Bid shall continue to remain irrevocable, subject to the terms and conditions of the Bidding Procedures.

(k) Bid Deadline: The following parties must receive a Bid for all the Combined Souper/Grandy's Assets in writing, on or before [      ], 2011 at 4:00 p.m. (prevailing Eastern Time) or such earlier date as may be agreed to by the Debtors (the "Bid Deadline"): (i) the Debtors, Souper Salad, Inc., 4004 Belt Line Road, Suite 160, Addison, Texas 75201, Attn: Chief Executive Officer; (ii) counsel for the Debtors, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: Scott K. Rutsky; (iii) counsel to the Committee,

Pachulski Stang Ziehl & Jones, LLP, 919 N. Market Streets, 17th Floor, Wilmington, DE 19801, Attn: Bradford J. Sandler, Esquire; (iv) counsel to the Grandy's Stalking Horse Purchaser, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654, Attn: Patrick J. Nash, Jr.; and (v) Morgan Joseph, 3475 Piedmont Road, Suite 260, Atlanta, Georgia 30305, Attn: Alex Fisch.

### *Qualified Bids Relating to Any of the Proposed Asset Sales.*

A Bid received from a Bidder before the Bid Deadline that meets the above requirements for the applicable assets shall constitute a "Qualified Bid" for such assets, and such Bidder shall constitute a "Qualified Bidder" for such assets. Solely with respect to the Grandy's Assets, and notwithstanding anything herein to the contrary, the Grandy's Asset Purchase Agreement submitted by the Grandy's Stalking Horse Purchaser shall be deemed a Qualified Bid for the Grandy's Assets, and the Grandy's Stalking Horse Purchaser a Qualified Bidder for the Grandy's Assets. In addition, the Grandy's Stalking Horse Purchaser will receive, from each Bidder, a copy of any Bids at the time such Bid is submitted to the Debtors. The Debtors shall use reasonable efforts to inform counsel to the Grandy's Stalking Horse Purchaser whether the Debtors will consider such Bids to be Qualified Bids by three (3) days prior to the Auction (and in any event will inform the Grandy's Stalking Horse Purchaser of any ongoing Bid negotiations by or before such time) but in any event no later than one (1) day prior to the Auction.

### Auction

### *Auction Solely for the Grandy's Assets.*

If one or more Qualified Bids solely for the Grandy's Assets (other than the Grandy's Asset Purchase Agreement submitted by the Grandy's Stalking Horse Purchaser) are received by the Bid Deadline, the Debtors will conduct an auction (the "Grandy's Auction") to determine the highest and best Qualified Bid for the Grandy's Assets. This determination shall take into account any factors the Debtors reasonably deem relevant to the value of the Qualified Bid to the estates and may include, among other things, the following: (a) the amount and nature of the consideration; (b) the number, type and nature of any changes to the Grandy's Asset Purchase Agreement requested by each Bidder; (c) the extent to which such modifications are likely to delay closing of the sale of the Grandy's Assets and the cost to Sellers of such modifications or delay; (d) the total consideration to be received by Sellers; (e) the likelihood of the Bidder's ability to close a transaction and the timing thereof; and (f) the net benefit to the estate, taking into account the Grandy's Stalking Horse Purchaser's rights to the Breakup Fee and Expense Reimbursement (collectively, the "Grandy's Bid Assessment Criteria"). For avoidance of doubt, the Successful Bid solely for the Grandy's Assets must include cash in an amount no less then the Grandy's Minimum Cash Amount with respect to a Bid solely for the Grandy's Assets (it being agreed that the Grandy's Minimum Cash Amount required of the Grandy's Stalking Horse Purchaser shall be reduced by the dollar value of the Expense Reimbursement). If no Qualified Bid (other than the Grandy's Asset Purchase Agreement) is received by the Bid Deadline, the Debtors may determine not to conduct the Grandy's Auction. Unless otherwise agreed to by the Grandy's Stalking Horse Purchaser in its sole discretion, only Qualified Bidders may participate in the Grandy's Auction.

*Auction Solely for the Souper Salad Assets.*

If two or more Qualified Bids are received by the Bid Deadline solely for the Souper Salad Assets, the Debtors will conduct an auction (the "Souper Salad Auction"), and along with the Committee will determine the highest and best Qualified Bid, for the Souper Salad Assets. Prior to the Souper Salad Auction, the Debtors may negotiate with the Qualified Bidders for the Souper Salad Assets to obtain the highest possible Auction Baseline Bid (as defined below) solely for the Souper Salad Assets and may, but are not required to, grant a single Qualified Bidder bid protections as set forth in the Bidding Procedures Order. The determination of the highest and best Qualified Bid solely for the Souper Salad Assets shall take into account any factors the Debtors and the Committee reasonably deem relevant to the value of the Qualified Bid to the estate, and may include, among other things, the following: (a) the amount and nature of the consideration; (b) the number, type and nature of any changes to the Souper Salad Asset Purchase Agreement requested by each Bidder; (c) the extent to which such modifications are likely to delay closing of the sale of the Souper Salad Assets and the cost to Sellers of such modifications or delay; (d) the total consideration to be received by Sellers; (e) the likelihood of the Bidder's ability to close a transaction and the timing thereof; and (f) the net benefit to the estate, taking into account any Souper Salad Breakup Fee that may be granted (collectively, the "Souper Salad Bid Assessment Criteria").

*Auction for the Combined Assets of Souper Salad and Grandy's.*

If one or more Qualified Bid is received by the Bid Deadline for all of the Combined Souper/Grandy's Assets, the Debtors may conduct an auction (the "Combined Auction" and, such auction and any Grandy's Auction and any Souper Salad Auction conducted by the Debtors are each individually or collectively, as the context dictates, sometimes referred to herein as the "Auction") to determine with the Committee the highest and best Qualified Bid for the Combined Souper/Grandy's Assets. This determination may take into account the Grandy's Bid Assessment Criteria, the Souper Salad Bid Assessment Criteria, as well as any other factors the Debtors reasonably deem relevant to the value of the combined Qualified Bid to the estate. For avoidance of doubt, the Successful Bid for the Combined Souper/Grandy's Assets must include (i) cash and other consideration in an amount no less then the Grandy's Minimum Cash Amount (including a cash component of an amount no less than the full dollar value of the Expense Reimbursement payable to the Grandy's Stalking Horse Purchaser, as detailed above, and it being agreed that the Minimum Cash Amount required of the Grandy's Stalking Horse Purchaser shall be reduced by the dollar value of the Expense Reimbursement)   plus (ii) any additional consideration provided by the Successful Bidders at the Grandy's Auction and the Souper Salad Auction, if any, plus (iii) the full dollar amount of any Souper Salad Breakup Fee granted to a Souper Salad Stalking Horse, if any plus (iv) $25,000.

## Procedures for Each Auction

The Auction shall take place on [     ], **2011 at 9:00 a.m. (prevailing Eastern Time)** at the offices of counsel for the Debtors, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, or such other place and time as the Debtors shall notify all Qualified Bidders, including, without limitation, the Grandy's Stalking Horse Purchaser, the Committee, counsel for the Grandy's Stalking Horse Purchaser and other invitees. Notwithstanding anything to the

contrary herein or otherwise, as soon as reasonably practicable after the conclusion of the Grandy's Auction and Souper Salad Auction, if any, the Combined Auction, if any, will take place. The Auction shall be conducted according to the following procedures:

Only the Debtors and their counsel, DIP Lenders and their counsel, members of the Committee and its professionals, the Grandy's Stalking Horse Purchaser and any other Qualified Bidder, in each case, along with their representatives, shall attend the Auction in person, and only the Grandy's Stalking Horse Purchaser and such other Qualified Bidders will be entitled to make any Bids at the Auction.

### The Debtors Shall Conduct the Auction.

The Debtors and their professionals shall direct and preside over the Auction, in consultation with the Committee. Other than as expressly set forth herein, the Debtors may conduct the Auction in the manner they determine, in consultation with the Committee, will result in the highest, best, or otherwise financially superior offer for the respective assets that are the subject of the Auction. At the start of the Auction, the Debtors shall describe the terms of the highest and best Qualified Bid or Qualified Bids for the Grandy's Assets, the Souper Salad Assets, and/or the Combined Souper/Grandy's Assets, as the case may be, (each such highest and best Qualified Bid for the Grandy's Auction, the Souper Salad Auction, and/or the Combined Auction, if any, respectively, the "Auction Baseline Bid"). The Debtors may revise the Auction Baseline Bid for the Combined Souper/Grandy's Assets prior to the commencement of the Combined Auction based on the outcome of the Auctions for each of the Grandy's Assets and the Souper Salad Assets. Each Qualified Bidder participating in the Auction must confirm that it has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein.

### Terms of Overbids.

An "Overbid" is any bid made at the Auction subsequent to the Debtors' announcement of the respective Auction Baseline Bid for such Auction. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

(a)   Minimum Overbid Increments Applicable to Respective Auctions.

    (i)   Grandy's Auction: Any Overbid solely for the Grandy's Assets after and above the respective Auction Baseline Bid shall be made in increments valued at not less than $100,000. Additional consideration in excess of the amount set forth in the respective Auction Baseline Bid may include cash and/or noncash consideration and, in the case of a Bid by the Grandy's Stalking Horse Purchaser, a credit bid of the Expense Reimbursement.

    (ii)   Souper Salad Auction: Any initial Overbid solely for the Souper Salad Assets after and above the respective Auction Baseline Bid shall be made in an initial increment valued at not less than the sum of (a) the Souper Salad Breakup Fee, if any, plus (b) $50,000. Any subsequent Overbids solely for the Souper Salad Assets shall be made in increments of not less than $50,000. Additional consideration in excess of the initial Overbid for

the Souper Salad Assets may include cash and/or noncash consideration, and, in the case of a Bid by any Qualified Bidder granted the Souper Salad Breakup Fee, a credit bid of the Souper Salad Breakup Fee.

(iii)  <u>Combined Auction</u>:  Any initial Overbid for all of the Combined Souper/Grandy's Assets after and above the respective Auction Baseline Bid shall be made in increments valued at not less than $100,000 plus the greater of (a) the sum of highest and best Qualified Bid solely for the Grandy's Assets and the highest and best Qualified Bid solely for the Souper Salad Assets, or (b) the sum of (i) the Auction Baseline Bid for the Souper Salad Assets, (ii) the Souper Salad Breakup Fee, if any, plus (iii) the Auction Baseline Bid for the Grandy's Assets, or any combination of (a) and (b) as appropriate to maximize the value of the Debtors assets for the estates.  Any subsequent Overbids for all of the Combined Souper/Grandy's Assets shall be made in increments of not less than $100,000.  Additional consideration in excess of the amount set forth in the Auction Baseline Bid for all of the Combined Souper/Grandy's Assets may include cash and/or noncash consideration and, in the case of a Bid by the Grandy's Stalking Horse Purchaser, a credit bid of the Expense Reimbursement and the Breakup Fee.

(b)  <u>Grandy's Stalking Horse Purchaser May Credit Bid Grandy's Bid Protections</u>: The Grandy's Stalking Horse Purchaser shall be permitted to bid at the Grandy's Auction, if any, and at the Combined Auction, if any, and shall be permitted to credit bid the full amount of the Expense Reimbursement pursuant to any Overbid in connection with each round of bidding in the Grandy's Auction or the Combined Auction, as the case may be.

(c)  <u>Remaining Terms Are the Same as for Qualified Bids</u>:  Except as modified herein, an Overbid at any Auction must comply with the conditions for a Qualified Bid set forth above, <u>provided</u>, <u>however</u>, that the Bid Deadline shall not apply.  Any Overbid must remain open and binding on the Bidder until and unless the Debtors accept a higher Overbid.

At the Debtors' discretion in consultation with the Committee, to the extent not previously provided (which shall be determined by the Debtors), a Bidder submitting an Overbid at any Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors) demonstrating such Bidder's ability to close the Alternative Transaction proposed by such Overbid.

***Announcement and Consideration of Overbids.***

(a)  <u>Announcement of Overbids</u>:  At each respective Auction, the Debtors shall announce at the Auction the material terms of each Overbid and the basis for calculating the total consideration offered in each such Overbid.

(b)  Consideration of Overbids: The Debtors reserve the right, in their reasonable business judgment and in consultation with the Committee, to make one or more continuances of any Auction to, among other things: facilitate discussions between the Debtors and individual Bidders; allow individual Bidders to consider how they wish to proceed; and give Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors in their reasonable business judgment may require, that the Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Alternative Transaction at the prevailing Overbid amount.

***Backup Bidder.***

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the party or combination of parties with the next highest or otherwise best Qualified Bid or combination of Qualified Bids at the Auction, as determined by the Debtors, in the exercise of their business judgment, will be designated as the potential backup bidder (each a "Potential Backup Bidder"). In the event that a Qualified Bidder is identified by the Debtors as a Potential Backup Bidder, such party shall be required to serve as the backup bidder if selected to do so (each a "Backup Bidder" and, collectively, the "Backup Bidders").

Each Backup Bidder shall be required to keep its initial Bid (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "Backup Bid") open and irrevocable until the earlier of 5:00 p.m. (prevailing Eastern Time) on the date that is forty (40) days after the date of the Auction (the "Outside Backup Date") or the closing of the transaction with the Successful Bidder (defined herein). Following the Sale Hearing, if any Successful Bidder (defined herein) fails to consummate an approved transaction, because of a breach or failure to perform on the part of such Successful Bidder (defined herein) within thirty (30) days following the entry of an order approving such transaction, the Debtors may designate one or more Backup Bidders to be the new Successful Bidders (defined herein), and the Debtors will be authorized, but not required, to consummate the transaction, with each designated Backup Bidder without further order of the Bankruptcy Court. In such case, the defaulting Successful Bidder's deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available damages from the defaulting Successful Bidder (defined herein). The deposit of the Backup Bidder shall be held by the Debtors until the earlier of 72 hours after (i) the closing of the transaction with the Successful Bidder (defined herein) for the assets bid upon by such Backup Bidder and (ii) the Outside Backup Date.

***Additional Procedures.***

The Debtors, in consultation with the Committee, may announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction so long as such rules are not inconsistent in any material respect with these Bidding Procedures or, in the case of the Grandy's Auction or the Combined Auction, the Grandy's Asset Purchase Agreement.

### Consent to Jurisdiction as Condition to Bidding.

The Grandy's Stalking Horse Purchaser, any Souper Salad Stalking Horse, all Qualified Bidders and all Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the Grandy's Asset Purchase Agreement, any Souper Salad Asset Purchase Agreement, the Auction or the construction and enforcement of any Alternative Transaction Documents.

### Sale Is As Is/Where Is.

The Grandy's Assets, the Souper Salad Assets, and/or the Combined Souper/Grandy's Assets, as the case may be, shall be conveyed at Closing free and clear of all liens, claims, interests and encumbrances, and in their then present condition, **"AS IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED."**

### Closing the Auction.

The Auction shall continue until there is (a) only one Qualified Bid for the Grandy's Assets and one Qualified Bid for the Souper Salad Assets or (b) only one Qualified Bid for the Combined Souper/Grandy's Assets that the Debtors determine in their reasonable business judgment, after consultation with their financial and legal advisors, their DIP Lenders and the Committee, is the highest and best Qualified Bid at the Auction for the respective assets. Thereafter, the Debtors shall select one or more of such Qualified Bids, the combination of which produces the highest and best recovery to the estates, as the overall highest and best Qualified Bid or Bids (each such Bid a "Successful Bid," and each Bidder submitting such Successful Bid, a "Successful Bidder"). In making this decision, the Debtors, in consultation with their financial and legal advisors, shall consider the Bid Assessment Criteria.

The Auction shall not close with respect to the Grandy's Assets, the Souper Salad Assets, and/or the Combined Souper/Grandy's Assets unless and until all Bidders who have submitted Qualified Bids for such assets have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbid. The Auction shall not be deemed closed with respect to the Grandy's Assets, the Souper Salad Assets, and/or the Combined Souper/Grandy's Assets until each Successful Bidder for any such assets has submitted fully executed sale and transaction Documents memorializing the terms of its respective Successful Bid.

The Debtors shall not consider any Bids submitted after the conclusion of the Auction.

### Bid Protections

### Grandy's Assets.

Pursuant to the Bidding Procedures Order, the Grandy's Stalking Horse Purchaser is entitled to an Expense Reimbursement, in an amount of up to $300,000, in each case, pursuant to the terms of the Grandy's Asset Purchase Agreement and the Bidding Procedures Order.

Pursuant to the Bidding Procedures Order, except for the Grandy's Stalking Horse Purchaser, no other party submitting an offer or Bid solely for the Grandy's Assets or a Qualified Bid solely for the Grandy's Assets shall be entitled to any expense reimbursement, breakup fee, termination or similar fee or payment.

***Souper Salad Assets.***

The Debtors are authorized, but not required, to offer any single Qualified Bidder bid protections in the form of a breakup fee in an amount equal to up to five percent (5%) of the negotiated and agreed purchase price for the Souper Salad Assets.

## Sale Hearing

The Debtors have scheduled a hearing (the "Sale Hearing") on [    ], **2011 at [    ]**, to seek approval of the transactions contemplated by the Grandy's Asset Purchase Agreement and/or any Successful Bid or Successful Bids. Objections, if any, to the sale of all or any portion of the Combined Souper/Grandy's Assets to any Successful Bidder, the transactions contemplated by the Grandy's Asset Purchase Agreement, the Souper Salad Asset Purchase Agreement, or the Combined Asset Purchase Agreement, as applicable, and/or the relief requested in the Motion must be in writing and filed with the Court no later than 4:00 p.m. (prevailing Eastern time) **on the date that is six (6) days before the date of the Sale Hearing** and be served such that they are actually received by (i) the Debtors, Souper Salad, Inc., 4004 Belt Line Road, Suite 160, Addison, Texas 75201, Attn: Chief Executive Officer; (ii) counsel for the Debtors, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: Scott K. Rutsky; (iii) counsel to the Committee, Pachulski Stang Ziehl & Jones, LLP, 919 N. Market Streets, 17th Floor, Wilmington, DE 19801, Attn: Bradford J. Sandler, Esquire; (iv) counsel to the Grandy's Stalking Horse Purchaser, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654, Attn: Patrick J. Nash, Jr.; and (v) Morgan Joseph, 3475 Piedmont Road, Suite 260, Atlanta, Georgia 30305, Attn: Alex Fisch.

## Return of Good Faith Deposits

The Good Faith Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts by the Debtors, but shall not become property of the Debtors' estates absent further order of the Court. The Good Faith Deposit of any Qualified Bidder that is neither a Successful Bidder nor a Backup Bidder shall be returned to such Qualified Bidder not later than two (2) business days after the Sale Hearing. The Good Faith Deposit of each Backup Bidder, if any, shall be returned to the respective Backup Bidder on the date that is the earlier of 72 hours after (a) the closing of the transaction with the Successful Bidder (defined herein) for the assets bid upon by such Backup Bidder and (b) the Outside Backup Date. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If a Successful Bidder timely closes its winning transaction, its Good Faith Deposit shall be credited towards its purchase price.

## Miscellaneous

No later than six days prior to the Sale Hearing, or within twenty four hours of a request if such request is made after six days prior the Sale Hearing, the Debtors shall provide to any

landlords or counterparties to executory contracts or unexpired real property leases (each a "Contract Counterparty", and collectively the "Contract Counterparties") who so request in writing to Debtors' counsel adequate assurance of future performance relative to unexpired real property leases or executory contracts provided to the Debtors pursuant to these procedures, and the Contract Counterparties shall maintain such information as confidential. The Contract Counterparties are prohibited from disclosing the identity of any Bidder and from contacting, except through Debtors' counsel, any Bidder prior to the Debtors' identification of the Successful Bidder or Bidders and Backup Bidder or Bidders following the Auction without prior written consent of the Debtors.

## Reservation of Rights

Except as otherwise provided in the Grandy's Asset Purchase Agreement, the Bidding Procedures or the Sale Order, the Debtors further reserve the right as they may reasonably determine to be in the best interest of their estates, in consultation with their DIP Lenders and the Committee, to: (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (iii) contrary to the best interests of the Debtors and their estates; (e) remove some or all of the Combined Souper/Grandy's Assets from the Auction; (f) waive terms and conditions set forth herein with respect to all potential bidders; (g) impose additional terms and conditions with respect to all potential bidders; (h) extend the deadlines set forth herein; (i) continue or cancel the Auction and/or Sale Hearing in open court without further notice; and (j) modify the Bidding Procedures as they may determine to be in the best interests of their estates or to withdraw the Motion at any time with or without prejudice.

**EXHIBIT 2**

**Sale Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re | ) | |
| | ) | Chapter 11 |
| | ) | Case No. 11-_____ (__) |
| SSI Group Holding Corp., *et al.*, [1] | ) | |
| | ) | (Joint Administration Requested) |
| | ) | |
| Debtors. | ) | |
| | ) | |

## NOTICE OF AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On [____], SSI Group Holding Corp., and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), filed their Motion[2] for entry of an order (the "Bidding Procedures Order"), among other things, (a) approving bid procedures (the "Bidding Procedures"), as well as certain bid protections, for the sale of all or substantially all of the Debtors' assets either through separate sales of the Debtors' Souper Salad and Grandy's businesses (the "Souper Salad Sale" and the "Grandy's Sale" respectively) , or though one consolidated sale of both businesses (such a sale, the "Combined Souper Salad/Grandy's Sale")  and together with the Souper Salad and./or Grandy's Sale, collectively, the "Sales"); (b) approving the form and manner of notice of the Sales and the assumption and assignment of executory contracts and unexpired leases (the "Contracts and Leases") in connection therewith; (c) scheduling one or more auctions (each auction individually, and as the context dictates, collectively, the "Auction") and a sale hearing (the "Sale Hearing") to consider approval of the proposed Sales; (d) approving the execution of the Asset Purchase Agreement for the Grandy's Sale with the Captain D's, LLC, (the "Grandy's Stalking Horse Purchaser"), approving the proposed break-up fee and expense reimbursement for the benefit of the Grandy's Stalking Horse Purchaser in connection therewith, and authorizing the Debtors to perform such obligations in connection therewith which arise prior to the Sale Hearing; and (e) authorizing, but not requiring, the Debtors' in their discretion to enter into a stalking horse agreement with a single bidder for the Souper Salad Sale, approving a break-up fee in connection therewith, and authorizing the Debtors to perform such obligations thereunder which arise prior to the Sale

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: SSI Group Holding Corp. (0158), Souper Salad, Inc. (0941), SSI-Grandy's LLC (4554) and Souper Brands, Inc. (5468).  The Debtors' corporate headquarters and the mailing address for each of the Debtors is 4004 Belt Line Rd., Suite 160, Addison, TX 75001.

[2]   Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Hearing. The Motion additionally requests entry of an order (the "Sale Order") approving (i) the Sale or Sales free and clear of liens, claims, encumbrances and interests; (ii) assumption and assignment of certain executory contracts and unexpired leases; and (iii) certain related relief.

2.      On [_____], the United States Bankruptcy Court for the District of Delaware entered the Bidding Procedures Order [Docket No. ___]. Pursuant to the Bidding Procedures Order, the Auction shall take place on [_____] **at 9:00 a.m. (prevailing Eastern Time)** at the offices of Proskauer Rose LLP, Eleven Times Square, New York, New York 10036.  Only parties that have submitted a Qualified Bid in accordance with the Bidding Procedures, attached to the Bidding Procedures Order as Exhibit 1, by no later than [____] **at 4:00 p.m. (Eastern Time)** (the "Bid Deadline") may participate at the auction.  Any party that wishes to take part in this process and submit a bid in connection with one or more of the Sales must submit a competing bid prior to the Bid Deadline and in accordance with the Bidding Procedures.  Parties interested in receiving information regarding the sale of the Acquired Assets should contact the Debtors' investment bankers, Morgan Joseph TriArtisan LLC, 3475 Piedmont Road, Suite 260, Atlanta, Georgia 30305, Attn: Alex Fisch, Telephone 212-218-3807, Email: afisch@mjta.com

3.      The Sale Hearing to consider approval of the Sales to the Grandy's Stalking Horse Purchaser and/or such other Successful Bidder or Successful Bidders (as defined in the Bidding Procedures) free and clear of all liens, claims and encumbrances will be held before the Honorable [_____], United States Bankruptcy Judge, 824 North Market Street, [___ Floor, Courtroom #___] Wilmington, DE 19801 on [_____] at _____ **(prevailing Eastern Time)**, or at such earlier date as counsel may be heard.  The Sale Hearing may be continued from time to time without further notice to creditors or parties in interest other than by announcement of the continuance in open court on the date scheduled for the Sale Hearing (or in agenda).

4.      Objections, if any, to the Sales, or the relief requested in the Motion (including with respect to cure amounts and, solely with respect to the Grandy's Stalking Horse Purchaser, adequate assurance) must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, DE 19801 (or filed electronically via CM/ECF), on or before **4:00 p.m. (prevailing Eastern Time) on** [_____], or such earlier date and time as the Debtors may agree and (d) be served so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the same day, upon: (i) counsel to the Debtors, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: Scott K. Rutsky and Cozen O'Connor, 1201 N. Market Street, Suite 1400, Wilmington, Delaware 19801, Attn: Mark E. Felger; (ii) counsel to the Committee, Pachulski Stang Ziehl & Jones, LLP, 919 N. Market Streets, 17th Floor, Wilmington, DE 19801, Attn: Bradford J. Sandler, Esquire; (iii) counsel to the Grandy's Stalking Horse Purchaser, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654, Attn: Patrick J. Nash, Jr.; and (iv) the Office of the United States Trustee.

5.      In the event that the Grandy's Stalking Horse Purchaser is not the Successful Bidder at the Auction, the non-Debtor party to any of the Contracts and Leases will have until **4:00 p.m. (prevailing Eastern Time) on** [_____], to object to the Successful Bidder's or Successful Bidders' ability to perform under such Contracts and Leases.

3

6.      This Notice and the Sale Hearing are subject to the fuller terms and conditions of the Motion, the Bidding Procedures Order and the Bidding Procedures, which shall control in the event of any conflict and the Debtors encourage parties in interest to review such documents in their entirety.  Copies of the Motion, the Asset Purchase Agreement, the Bidding Procedures, and/or the Bidding Procedures Order may be obtained by written request to counsel to the Debtors, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: Scott K. Rutsky.  In addition, copies of the aforementioned pleadings may be found on the Pacer's website, http://ecf.flsb.uscourts.gov.

Dated: _____, 2011                                Respectfully submitted,

 

 

 
_____

PROSKAUER ROSE LLP
Scott K. Rutsky, Esq.
Adam T. Berkowitz, Esq.
*Counsel for the Debtors*
Eleven Times Square
New York, NY 10036
Telephone:  (212) 969-3000
Facsimile:  (212) 969-2900

**EXHIBIT 3**

**Cure Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) |
| | ) |
| | ) Chapter 11 |
| SSI Group Holding Corp., *et al.*, [1] | ) Case No. 11-_____ (___) |
| | ) |
| | ) (Joint Administration Requested) |
| Debtors. | ) |
| | ) |

## NOTICE TO COUNTERPARTIES TO POTENTIALLY ASSUMED
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES[2]

**PLEASE TAKE NOTICE** that on [_____], 2011, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") filed a motion [Docket No. _____] (the "Sale Motion") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") which seeks approval of key dates, times and procedures related to the sale of substantially all of the Debtors' assets (the "Acquired Assets") either through separate sales of the Debtors' Souper Salad and Grandy's businesses, or though one consolidated sale of both businesses. On [_____], 2011, the Bankruptcy Court approved the Bidding Procedures. On [_____], 2011, the Debtors intend to seek approval of, among other things, the sale of the Acquired Assets, including the assumption and assignment of certain executory contracts and unexpired leases. To the extent that there are any inconsistencies between the Bidding Procedures and the summary description of the terms and conditions contained in this Notice, the terms of the Bidding Procedures shall control.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS AS SET FORTH ON EXHIBIT A ATTACHED HERETO.[3]**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: SSI Group Holding Corp. (0158), Souper Salad, Inc. (0941), SSI-Grandy's LLC (4554) and Souper Brands, Inc. (5468). The Debtors' corporate headquarters and the mailing address for each of the Debtors is 4004 Belt Line Rd., Suite 160, Addison, TX 75001.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Bidding Procedures or the Bidding Procedures Order, as applicable.

[3] This Notice is being sent to counterparties to Executory Contracts and Unexpired Leases. This Notice is <u>not</u> an admission by the Debtors that such contract or lease is executory or unexpired. The mere inclusion of any executory contract or unexpired lease in this Notice does not require or guarantee that such executory contract

(Continued...)

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures, the Debtors **may** assume and assign to the Grandy's Stalking Horse Purchaser and/or such other Successful Bidder or Successful Bidders (as defined in the Bidding Procedures) the executory contract(s) or unexpired lease(s) listed on <u>Exhibit A</u> attached hereto (each, an "<u>Scheduled Contract</u>") to which you are a counterparty. The Debtors have conducted a review of their books and records and have determined that the cure amount for unpaid monetary obligations under such Scheduled Contract is as set forth on <u>Exhibit A</u> attached hereto (the "<u>Cure Amount</u>"). **<u>If you disagree with the proposed Cure Amount, object to the proposed assignment to the Grandy's Stalking Horse Purchaser of the Scheduled Contract(s) or object to the Grandy's Stalking Horse Purchaser' ability to provide adequate assurance of future performance with respect to any Scheduled Contracts, you must file an objection with the Bankruptcy Court no later than 4:00 p.m. (prevailing Eastern Time) on [ ], (the "Objection Deadline") and serve such objection on (a) the Debtors, Souper Salad, Inc., 4004 Belt Line Road, Suite 160, Addison, Texas 75201, Attn: Chief Executive Officer; (b) counsel for the Debtors, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036, Attn: Scott K. Rutsky; (c) counsel to the "Committee, Pachulski Stang, Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19801 (Attention: Bradford J. Sandler, Esquire; (d) counsel to the Grandy's Stalking Horse Purchaser, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654, Attn: Patrick J. Nash, Jr.; and (e) the Office of the United States Trustee (collectively, the "Contract Objection Notice Parties"), so that it is actually received no later than 4:00 p.m. (prevailing Eastern Time) on [ ].</u>**

**PLEASE TAKE FURTHER NOTICE** that the Debtors propose that if no objection to (a) the Cure Amount(s), (b) the proposed assignment of the Scheduled Contract(s) to the Grandy's Stalking Horse Purchaser or (c) adequate assurance of the Grandy's Stalking Horse Purchaser' ability to perform is filed by Objection Deadline, (i) you will be deemed to have stipulated that the Cure Amount(s) as determined by the Debtors is correct, (ii) you shall be forever barred, estopped and enjoined from asserting any additional cure amount under the Scheduled Contract(s) and (iii) you will be forever barred from objecting to the assignment of the Assumed Executory Contract(s) to the Grandy's Stalking Horse Purchaser adequate assurance of future performance.

**PLEASE TAKE FURTHER NOTICE** that in the event the Grandy's Stalking Horse Purchaser is not the Successful Bidder at the Auction, any counterparty to a Scheduled Contract shall have the right to object to the Successful Bidder's ability to perform **<u>you must file an objection with the Bankruptcy Court no later than 4:00 p.m. (prevailing Eastern Time) on [ ],and serve such objection on the Contract Objection Notice Parties so that it is actually received no later than 4:00 p.m. (prevailing Eastern Time) on [ ].</u>** To the extent such counterparty does not object in accordance herewith, the Bankruptcy Court may

---

or unexpired lease will be assumed and assigned, and all rights of the Debtors with respect to such Executory Contracts and Unexpired Leases are reserved.

enter an order forever barring such counterparty to a Scheduled Contract from objecting to the adequate assurance of the Successful Bidder's ability to perform.

**PLEASE TAKE FURTHER NOTICE** that with respect to any Scheduled Contract assumed and assigned to the Successful Bidder or Successful Bidders (including the Grandy's Stalking Horse Purchaser), all Cure Amounts shall be satisfied by payment of the Cure Amounts as soon as reasonably practicable after Bankruptcy Court approval of the sale of the Acquired Assets to the Successful Bidder (including the Grandy's Stalking Horse Purchaser) or on such other terms as the parties to each such Scheduled Contract may otherwise agree without any further notice to or action, order or approval of the Bankruptcy Court. In addition, the assumption of each such Scheduled Contract may be conditioned upon the disposition of all issues with respect to such Scheduled Contract.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures, with respect to any Scheduled Contract, in the event of a dispute regarding: (a) the amount of any Cure Amount; (b) the ability of the Successful Bidder or Successful Bidders (including the Grandy's Stalking Horse Purchaser) to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), if applicable, under such Scheduled Contract; or (c) any other matter pertaining to assumption, the Cure Amounts shall be paid as soon as reasonably practicable following the entry of a final order resolving the dispute and approving the assumption of such Scheduled Contract; provided, however, that the Debtors may settle any dispute regarding the amount of any Cure Amount or assignment to the Successful Bidder or Successful Bidders (including the Grandy's Stalking Horse Purchaser) without any further notice to or action, order or approval of the Bankruptcy Court.

**PLEASE THAT FURTHER NOTICE THAT** notwithstanding anything herein, this Notice shall not be deemed to be an assumption, adoption, rejection or termination of the Scheduled Contracts. Moreover, the Debtors explicitly reserve their rights, in their sole discretion, to reject or assume each Scheduled Contract pursuant to section 365(a) of the Bankruptcy Code and nothing herein (a) alters in any way the prepetition nature of the Scheduled Contracts or the validity, priority or amount of any claims of a counterparty to an Scheduled Contract against the Debtors that may arise under such Scheduled Contract, (b) creates a postpetition contract or agreement or (c) elevates to administrative expense priority any claims of an counterparty to an Scheduled Contract against the Debtors that may arise under such Scheduled Contract.

Dated: _____, 2011            Respectfully submitted,

_____

PROSKAUER ROSE LLP
Scott K. Rutsky, Esq.
Adam T. Berkowitz, Esq.
*Counsel for the Debtors*
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

## EXHIBIT A

| [Counterparty Name] | [Contract/Lease] | Cure Amount |
| --- | --- | --- |

# EXHIBIT 4

## Assumption Notice

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) |
| | ) |
| | ) Chapter 11 |
| SSI Group Holding Corp., *et al.*, [1] | ) Case No. 11-_____ (___) |
| | ) |
| | ) (Joint Administration Requested) |
| Debtors. | ) |
| | ) |

## NOTICE OF ASSUMPTION AND ASSIGNMENT
## OF EXECUTORY CONTRACT OR UNEXPIRED LEASE

**PLEASE TAKE NOTICE THAT**:

1.    A hearing (the "Sale Hearing")[2] was held at [_____] __m. on [_____] before the Honorable **[TO COME]**, United States Bankruptcy Judge, in the Bankruptcy Court, 824 North Market Street, [___ Floor, Courtroom #___] Wilmington, DE 19801.  At the Sale Hearing, the Bankruptcy Court entered an order (the "Sale Order") (a) approving the sale of the Acquired Assets to [    ] (the "Purchaser") in accordance with the Asset Purchase Agreement, and (b) authorizing the Debtors, among other things, to assume and assign the Assumed Executory Contracts to the Purchaser, as defined in the Asset Purchase Agreement, pursuant to the terms of the Asset Purchase Agreement,

2.    The Purchaser has elected to take assignment of the contracts and leases as set forth          on          <u>Exhibit          A</u>          hereto.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: SSI Group Holding Corp. (0158), Souper Salad, Inc. (0941), SSI-Grandy's LLC (4554) and Souper Brands, Inc. (5468).  The Debtors' corporate headquarters and the mailing address for each of the Debtors is 4004 Belt Line Rd., Suite 160, Addison, TX 75001.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Bidding Procedures or the Bidding Procedures Order, as applicable.